The Court will now call Case No. 126014, Guns Save Life, Inc., et al. v. Zahra Ali, et al. Mr. Patterson, are you ready to proceed? Yes, Your Honor. Mr. Jimenez, you may proceed. Thank you. Good morning, Your Honors, and may it please the Court, Pete Patterson to Laws that single out constitutional rights for special taxation are repugnant to our constitutional tradition. This Court and the United States Supreme Court have struck down such laws in contexts as varied as the freedom of the press, the freedom of religion, the right to marry, the right to vote, the right to travel, and the right to access the courts. And yet, despite this long and unbroken tradition, the Court of Appeals upheld Cook County's law singling out Second Amendment rights for special taxation. Unless the Second Amendment is a second-class right, which is a proposition that this Court and the United States Supreme Court have already rejected, Cook County's taxes must be struck down and the decision of the Court of Appeals must be reversed. Incredibly, the Court of Appeals did not even cite any of the cases striking down taxes on constitutional rights. Two of those cases are particularly pertinent here. First is the United States Supreme Court's decision in Minneapolis Star and Tribune. In that case, the Supreme Court struck down a Minnesota tax, use tax, on the paper and ink used by newspapers. The Court applied strict scrutiny despite the fact that the newspaper's burden under the use tax was lighter than the burden the newspapers would have had under the generally applicable sales tax, and the Court struck down the law under that review, holding that there were plenty of other options Minnesota had to raise revenue, particularly generally applicable taxes. The second case is this Court's decision in Boynton, which struck down the portion of the Illinois marriage license fee that was a tax that went to fund programs to combat domestic violence. The Court said that under Minneapolis Star and Tribune, because this was a tax on a fundamental constitutional right, it must be subject to strict scrutiny. And again, in that case, there was no evidence that anyone's marriage plans were affected by this tax, and yet the Court subjected to strict scrutiny and struck it down. Under these cases, there is simply no way to distinguish Cook County's tax on firearms and ammunition, and they must be struck down under that authority. The district court made several errors in its reasoning upholding, or the court of appeals, I'm sorry, made several errors in its reasoning upholding these taxes. First, it said they're not prohibitive. But that is not the law. In the Second Amendment context particularly, this Court in Shires rejected any substantial burden requirement before getting to heightened scrutiny. But perhaps more importantly, in the taxation cases, there is no burden analysis. As I explained in Minneapolis Star and Tribune, the tax burden was actually lighter for the newspapers under the use tax that was struck down. In this case, there was no evidence that anyone's marriage plans were affected. It is the fact of the special tax that constitutes the burden. And this is a tradition going back over 200 years to the Supreme Court's decision in McCulloch v. Maryland, striking down Maryland's attempt to tax the Second Bank of the United States, where the Court said, quote, And that is the same principle that's been applied in all these cases. It is the fact of the illegitimate tax that is the problem, and there is no inquiry into how practically burdensome the tax is. And in the end of the day, it's not a burden analysis. Kagan. And let me ask you a question to address a section of the Heller decision, the seminal case, in which Justice Scalia said, nothing in our opinion should be taken to mean to cast doubt on longstanding prohibition on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. Very clearly, the Heller decision looked at the issue when there is a commercial sale of arms, and that's specifically what we're talking about here. How does Justice Scalia's language there affect this case? Yes. There are several reasons that that does not affect the outcome of this case against this genre. First is, this Court in Shirez held that even Heller's presumptively constitutional regulations of Second Amendment rights still must be subject to heightened scrutiny. So as an initial matter, it is, you know, doesn't affect the ultimate analysis of the Court. But even beyond that, this is not a condition on the sale of arms. This is a tax. It's very explicit in the ordinance that it is on the consumer. It is to be paid by the consumer. If the seller does not collect it, yes. The condition on the commercial sale of arms. And commercial sale certainly includes a buyer and a seller. It does. But I mean, our submission is what Heller had in mind was things like, you know, certain requirements that sellers have to go through to qualify to sell arms. But even leaving that to the side, Heller used the word longstanding. And this sort of regulation is not longstanding. In fact, to our knowledge, the only two in history that have ever been in effect are Cook Counties and Seattle, and both were in the 2010s. And that is yes. Can I go back to the language? Longstanding. Yes. This paragraph is separated in commas. Right. Or the sentence, rather. Right. Longstanding prohibition on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places, or laws imposing conditions and qualifications on the commercial sale of arms. You're suggesting that all of those three different exceptions to the Heller case must be longstanding. Does that follow the rules of parsing grammar? You know, I don't know. You know, there's a rule of the last antecedent. I don't know about the first antecedent. But it is, regardless of the grammar, we would submit longstanding applies to all. But at Heller, the point is you look to the founding. The scope of the right is established at the founding when the right was adopted. So that is the key point to look at. And it's clear that at the founding, there was a right to acquire firearms, to purchase firearms. In fact, members of the militia, which was the whole body of male seditionary at age 18, under the Militia Act of 1792, had to acquire a firearm for themselves when they turned 18. Every person, every male in the country, with minor exceptions. So it's clear that there was this right. And it's also clear that these taxes burden that right. It is a direct tax on the acquisition of firearms and ammunition, which the Northern District of Illinois held as the most fundamental prerequisite to the exercise of the right to keep and bear arms. And the novelty of these taxes underscore their illegitimacy. In Grosjean, where the Supreme Court struck down a tax on newspapers, the Court said, quote, In view of the persistent search for new subjects of taxation, it is not without significance that so far as we can discover, no State during 150 years of our national existence has undertaken to impose a tax like that now in question. Here, now we're over, you know, 220 years. And similarly, these are novel taxes that have not been tried by other jurisdictions. It only heightens their illegitimacy. Counsel? Yes. The list that Justice Tice read from Helen, the first two in that list were clearly regulations and conditions under the police power. Yes. So when we look at something in Saratoga, would the third then theoretically also be conditions and qualifications under the police power generally, or could they also include under the taxing authority? Yes. I think it would be the police power. It would be conditions and qualifications on the sale of arms to ensure, you know, integrity and safety in those transactions, not applying special taxes to those transactions to raise revenue, which would be make the Second Amendment consistent with all other constitutional rights where, you know, they're subject to the police power in certain circumstances. In the Boynton case itself, this Court said marriage is subject to reasonable regulation, but it's not subject to taxation. Same in the Murdoch case. The Supreme Court said the evangelization that was at issue in that case sometimes gives rise to issues that the police power has to deal with, but the tax power is different. We don't single out constitutional rights for taxation. And while that's clear under the Second Amendment, it is particularly clear under this state's constitution, Article I, Section 22, which says subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed. Counsel, is there a problem then with any sales tax on the sale of weapons or ammunition? Absolutely not. And that is the critical distinction that has been drawn by all of these cases, Your Honors, that there is a difference between a generally applicable sales tax, which is not targeted at the exercise of a constitutional right, and a tax that singles out and applies a special tax to the exercise of a fundamental constitutional right. Again, in Minneapolis Star and Tribune, that was the key distinction, and the Court said the sales tax would have been fine even though, as Justice Rehnquist said in dissent, the burden under the sales tax would be estimated three times greater than under the use tax. And nevertheless, that was the key distinction. So, again, we would submit that as the key distinction here. Does it make any difference that this tax is on the gun owner versus on the seller? Well, to the extent it makes a difference, it is in our favor because it's clear that you are then taxing the individual exercise of that constitutional right, and that it is not in any way a regulation of the seller. Perhaps, as the language in the Supreme Court indicated, there could be more room for regulations of sellers. But, I mean, we would submit even a tax on the seller. It would not be legitimate. But it just makes it that much clearer that here it's on the consumer. And the Court of Appeals also relied on the Second Circuit's decision in Quong. But that decision actually favors us because, again, there the Court upheld a fee on firearm permits in New York. But it said the reason it was upholding those fees is because it was not a revenue tax. Instead, it was to defray the expenses of the licensing system that no one challenged in that case. That's the same line this Court drew in Boynton where it struck down the $10 tax on marriage licenses but did not disturb the $15 part of the fee, the $15 fee that otherwise was in place for administering the licensing system. And there was some, going back to the initial point I made about the prohibitive nature of these taxes, which, as I explained, you know, you don't need to get into any analysis of the practical burden of these taxes. But it's clear that they're not de minimis under the cases that have been decided. It's a $25 tax on firearms. In Boynton, you had a $10 tax on marriage, on marriage licenses. In Crocker, it was a $5 tax. In Harper, it was a $1.50 tax on voting. In Crandall, it was a dollar tax on travel. So, again, it is the fact of the tax that is the burden, not the amount. Quickly, we have an alternative argument under the uniformity clause, which this Court need not reach. But if it does, we again submit that Boynton controls this decision. There, the Court held that a tax on a fundamental right is not a reasonable way to raise revenue, to pay for general welfare program under the uniformity clause. And we have the same structure here, where it's a tax on a fundamental right meant to pay for general welfare programs. Here, the ammunition tax is directed at the public safety fund. The firearm tax is not directed by ordinance into any particular fund. So it's the same structure, and this is not a reasonable tax. And if anything, the case where the government was stronger in Boynton, as the case indicates, there was substantial evidence in the form of expert and statistical reports tying domestic violence to marriage. Obviously, a lot of domestic violence takes place within the marital context, and the Court nevertheless said that that was an illegitimate means of raising revenue to combat domestic violence. And here, the evidence indicates that the overwhelming majority of criminals do not purchase their guns at retail. So they're not going to pay this tax. That was part of the basis of the Northern District of Illinois' decision striking down Chicago's ban on gun stores. They said criminals don't typically purchase their guns at gun stores, so you're just And the county cites or the, yeah, the county cites some things in their brief in this case, including a compilation by a newspaper of 71 shooting incidents by CCL holders, but that clearly can't carry the county's burden under the Uniformity Clause. Let me ask you that along that same line. Yeah, sure. There is certainly an argument, maybe not well-developed, but there's certainly an argument being made here by the county that gun violence brings a financial burden. Gun violence, specifically here, they're just speak of how the courts are overwhelmed by cases of murder and robbery, aggravated battery with a firearm, that there's a gun violence brings a cost. Additionally, they argue, although it's not quite this case, but they argue that Cook County Hospital, the Cook County Public Health System, has a huge burden of millions of dollars that are expended to treat gun violence victims. So their argument is that there is a financial cost here and that somehow a tax is related to alleviate that burden. And I think the question that we have here is, as it is in so many of these other cases, where is the relationship between the good government policy here, the cost of gun violence, and the tax itself? In your view, is there any relationship between the burden of gun violence and the cost of gun violence and gun ownership? It's not been established, Your Honor, whether the cost is positive, negative, whether the net cost. Sure, there are costs, but there are also costs in prevented crime from people owning guns that county has not attempted to perform some empirical analysis. But in any event, in Boynton, there were costs from domestic violence, and many of those costs were coming from marriage. And there was expert evidence in that case to that effect. And yet the court said it didn't matter. Here, again, I said we have 71 shooting incidents. The first incident in that compilation was a woman who said her boyfriend shoved her against the wall and threatened to kill her. So she shot him. So these were not criminal incidents necessarily. And those are the types of people that the county is saying we need to tax. That is simply not yes. But the money is going to the county courts, the state's attorney, the public defender, the Cook County Jail. That's where the money is going in terms of this tax, specifically to support the criminal justice system where there is a huge amount of cases based on gun violence. Yes. And the answer is in Minneapolis Star and Tribune where it says if the county needs to raise revenue, there is a much less restrictive alternative that would burden substantially less protected conduct, and that is a generally applicable tax. That is how we fund programs in this country, not by taxing the exercise of constitutional rights. You could imagine a similar argument in other cases. Under the Fourth Amendment, there are costs imposed by defendants imposing their Fourth Amendment rights. We couldn't tax the exercise of the Fourth Amendment right because of those costs. Similarly, you know, any sorts of rights that involve the criminal justice system, we can't tax criminal defendants for exercising those rights, even if they impose costs. We do make them pay a fee. Well, and that is to defray the operation of the system, which is the line that has been drawn. If there is a licensing fee, for example, you can defray those costs. And that was the line in Crocker where it said there are court fees, but you cannot place an additional court fee for divorce to pay for domestic violence because that is a general welfare program here. And that is what we have in this case. Everyone admits this is a pure revenue tax. Sure, it may go to pay for certain things. Again, the firearm tax is not directed to any particular fund, unlike the ammunition tax. But this is a tax for general welfare. It's a revenue-raising measure. Cook County is preempted from regulating firearms. So this is clearly not a regulation on their view. If it is, we argue it's preempted. But we think the better reading is it's a tax and that it is unconstitutional for that reason. And I see my time has just expired. So thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Martha Victoria Jimenez, and I'll be arguing on behalf of Appalese Zahra Ali and Thomas Dart, both in their official capacities, as well as the Cook County Department of Revenue. This Court should uphold the ruling of the appellate court in its entirety, finding that the Cook County firearms and ammunitions tax are a proper exercise of Cook County's home rule taxing authority. They withstand scrutiny under the Second Amendment and the Illinois Constitution. They are not preempted by the FOID Act or the Firearm Concealed Carry Act. There's no uniformity clause issue. And plaintiff max and shooter supplies lack standing in this case. Justices, the Illinois Constitution allows home rule entities the power to exercise any function pertaining to their government or affairs, including the power to regulate, the power to incur debt, and most relevant for us here today, the power to tax. These powers are to be construed liberally, and this Court affirmed that in Mulligan where this Court recognized that the framers of the 1970 Constitution considered the power to tax to be essential to effective home rule. The General Assembly intended home rule to give entities the power to devise local solutions to local problems, because different home rule entities have different challenges. A solution that will work for Kane County will not work for Vermilion County, and something that works for Vermilion County will not work for Cook. In Cook County, Cook County is unique in that gun violence strains the county's already limited financial resources. As Your Honor mentioned, Cook County Health and Hospital Systems is the second largest public hospital system in the country. And in 2017 alone, it treated 1,100 gunshot patients, spending anywhere from $30,000 to $50,000 on each. This doesn't include the staggering expenses borne by the Cook County Sister agencies that actually have to deal day-to-day with gun crimes. The taxes at issue are a local solution that was devised by the county to defray these staggering expenses unique to Cook County. Not every home rule entity might choose to do this, but this is the elegant solution that the framers intended. It allows home rule entities like Cook County the freedom to enact a solution like this, and it also gives the counties like Kane and Vermilion and all the rest the freedom not to do it. Again, it's that freedom that's at issue in this case. And plaintiffs now concede that the taxes at issue are just that, they're taxes, not regulations. Counsel, do the home rule powers under the Illinois Constitution preempt Article 1, Section 22? No, Your Honor. It's our position that they do not. First off, they're taxes. And to the extent that both courts below already ruled that the tax was not an infringement, we don't believe it falls within, that it violates Article 1, Section 22 of the Illinois Constitution. I don't know that the appellate court, when I'm looking at how they handled Article 1, Section 22, they seem to treat it as the exercise of a police power, which it's not, and you're not saying it. You're saying this is a tax, it's not an exercise of police power. Article 1, Section 22 seems very explicit, and the appellate courts seem to gloss over it by using police power analysis. Well, Your Honor, whether you consider it a use of the police power or whether you adopt our view, which is that it is a tax, it's our position that it doesn't meaningfully infringe on the Second Amendment right, and therefore it doesn't fall within the purview of Article 1, Section 22. Counsel, are we looking at strict scrutiny? Is that the test? No. You heard plaintiffs mention during their opening that because the Second Amendment right is a fundamental right, it should be subject to strict scrutiny, and that that's the case for all fundamental rights. That's simply not true. There's a framework already in place, for example, in the First Amendment context when you deal with freedom of speech, that the level of scrutiny in First Amendment cases depends on the type of limitation that's in place. If you have something that's a content-based limitation, then strict scrutiny would apply. However, if you have a limitation that's content-neutral, intermediate scrutiny applies. So no, Your Honor, to answer that question, I would say that, well, first off, the taxes don't infringe the Second Amendment right, so you don't have to get to step two of the analysis. But if you were to, it's our position that intermediate scrutiny would apply, because intermediate scrutiny is the law of the land in the Seventh Circuit. It's what cases have – it's what courts and cases in Illinois and in the Seventh Circuit have used to analyze laws that encroach on Second Amendment activity. It's a de minimis infringement? Is that what you're arguing? It's a de minimis, yes. It's a de minimis insignificant burden on the acquisition of firearms or ammunition. But it is still an infringement. No, I'm sorry. I misspoke. It's a de minimis burden on the right. What's the difference between a burden and an infringement? To our view, anything that's a burden is something that would have a prohibitive impact or that somehow stand in the way of an individual being able to exercise their Second Amendment rights, and this is not. Well, that's in direct contradiction to the Boynton analysis, which said a $10 fee may be de minimis, but once we give you the power to tax, then all of a sudden it turns into a $1,000 fee. This is a $25 fee that if we give Cook County the right to tax could turn into a $250 or $2,500 fee, especially based on the preamble to the statute, which is basically we're doing this to try and keep guns out of the system. Well, Your Honor, as far as what's in the preamble to the enactment, we would say that the definitive statement of the legislative intent is in the actual language of the enactment and not the preamble, so Your Honors need not engage in looking at sources that are extrinsic to the actual terms of the enactment, and inside the tax ordinance it makes very clear that this is a tax that's at issue. And to the extent that plaintiff relies on Boynton, it is our position that Boynton is a highly distinguishable case. Not only does it not relate at all to the Second Amendment, it relates – it's different because our Supreme Court in Heller has limited the right to keep and bear arms, and it is not – and there isn't any kind of Supreme Court finding that limits thusly the right to marriage. So really the case is not applicable. And Minneapolis Star and Tribune, the other case that plaintiff's cite is also not a Second Amendment case, it deals with the First Amendment. So in that way, it's also not applicable and highly distinguishable because the county taxes at issue only apply to all purchasers, not the small group of purchasers that the Court was concerned with being singled out in the Minneapolis Star case. But again, Your Honor, if I may continue, nevertheless, if this Court disagrees and finds that a full Second Amendment inquiry is needed, the taxes would stand in heightened scrutiny because of their close relationship to the county's strong stake in reducing the fiscal burden created by taxes in Cahoot County. Firstly, the ordinance is presumed to be constitutional, and this Court is bound to construe and uphold its validity if reasonably possible. It's plaintiff's job to show you in this facial challenge, which is the hardest to mount, that there's no set of circumstances under which the ordinance might be valid. Plaintiff has failed to do so, and the taxes do not burden the Second Amendment. In Heller, the Supreme Court ruled that our Second Amendment protects an individual right to possess firearms for traditionally lawful purposes like defense in the home. But importantly, as Justice Tice pointed out, it is not an unlimited right, and the opinion was not meant to cast doubt on longstanding prohibitions on firearms, including laws that cast conditions or qualifications on the sale of arms. The Cook County tax is merely one of those presumptively lawful conditions that the Supreme Court intended to exist in Heller. We don't think there's a meaningful limitation in that clause to actually only be limited to firearms sales, that it was somehow only meant to sanction limitations on sellers. And that's the case because it's my understanding that there's no Second Amendment right to sell arms, and plaintiff didn't show any evidence to the contrary of that. So importantly, because Heller didn't set a doctrinal test, the circuits were left to themselves to sort of fashion out how to interpret laws that infringed on Second Amendment activity. And in Ezell, our Seventh Circuit borrowed from the First Amendment framework, which this Court followed in People v. Chirez. Now the ---- Well, Your Honor, just as a point of clarification, both taxes end up going into what is in essence the general Cook County fund that goes to fund the criminal justice agencies that are at the forefront. The ammunition fund. Yes. It also goes there as well. And I really have to take a few steps back and sort of point out sort of the de minimis nature of even the funds that are recouped. I mean, in 2020, the Cook County budget was in the area of $6 billion for the entire year, and the county recouped about $1.8 million as a result of the Cook County firearms and revenue tax. So it didn't make sense to parse it out any further than that for it to go to any special use place other than just the general budgets for the agencies that have to deal with gun crime in Cook County, which include the Office of the Chief Judge who presides over all gun cases, the State's Attorney's Office, which has to prosecute them, the Public Defender's Office, which has to defend those cases, and the Cook County Sheriff's Office, which has to house all the people that are charged. Well, the laws are passed with public safety. Yes. If it all goes to the general fund, how does that happen? I don't understand your question, Your Honor. If it all goes to the general fund, not all the strong public safety? No, but it nevertheless ends up in the coffers of the agencies that deal with gun crime. It goes into their general budget. Right. If Your Honor's asking what happens to them after they get there, are they earmarked or sent for a particular purpose, no, they're not. They're spent as part of the general funds to that agency. So, Your Honor, getting back to the two-pronged tests, first the courts must ask whether the law imposes a burden on conduct falling within the Second Amendment guarantee. If no, that is the end of the inquiry and the law stands. But if there is, then the second step involves evaluating the strength of the government's justification for the restriction. It's a sliding scale based on the nature of the law. A severe burden would call for strict scrutiny. A law which is less restrictive, like the law that's at issue here, would call for intermediate scrutiny. As I said before, here Your Honors need not get to step two because the taxes at issue fall safely into Heller's safe harbor provision. But nevertheless, if Your Honors were to, we would say that intermediate scrutiny is appropriate. Again, the law at issue is de minimis, and the appellate court noted that plaintiffs pled no facts to support their conclusion that the taxes restrict or prevent ownership and found the taxes to be akin to sales taxes and not prohibitive or exclusionary. Your Honors can take judicial notice of the fact that every year since the tax has been implemented, it has drawn in on average $1.1 million. In 2020, amidst the COVID pandemic and widespread joblessness, the tax revenues that we took in spiked to $1.8 million. So it's hard to argue that the tax has had any kind of a prohibitive or exclusionary effect on people asserting their rights to go out and buy firearms or buy ammunition. In fact, the appellate court found that plaintiffs could not identify any authority even for the premise that taxes imposed a burden on conduct with falling within the scope of the Second Amendment guarantee. And again, before you today, they don't offer any new case law or reasoning that would move the needle there. And to address plaintiff's point about a lack of a historical record to show that firearms haven't been tax-free, that's really not the case. There have always been taxes to which firearms have been subject. The National Firearms Act, enacted in 1934, imposed a $200 tax on certain firearms. It was upheld by the Supreme Court in Sinzinski v. U.S. They found the $200 tax to be a constitutional exercise of Congress's taxing power. Nobody has challenged this law post-Heller. And I would note that it's eight times the amount of the $25 tax that's at issue in this case. Watson v. Seattle, which is the other example that a plaintiff mentioned, in the post-Heller era, Washington Supreme Court upheld that tax, which is nearly identical to the tax we're talking about here today against the preemption challenge. While there wasn't a Second Amendment analysis in that case, the fact that there wasn't a Second Amendment analysis is what's instructive for our purposes. It implies that the tax was considered to be safe from constitutional infringements in the post-Heller era. For all these reasons, the county taxes do not burden the right, and this Court doesn't need to get to the second prong of the analysis. But if the Court disagrees and believes that the taxes do touch on the Second Amendment guarantee, the county's justification for the ordinance is strong, and any encroachment on the right is minimal. Remember again that in Quang B. Bloomberg, the Second Circuit upheld a $340 gun licensing fee under intermediate scrutiny analysis. That's what, 13 times the amount of the tax at issue here. Also, intermediate scrutiny is proper because, as I mentioned in my introduction, it conforms to the Seventh Circuit review of other laws that have imposed much greater restrictions on the right. In Culp v. Raul, the Seventh Circuit applied intermediate scrutiny to Illinois' Firearm Concealed Carry Act scheme. In U.S. v. Scoyne, the Seventh Circuit applied intermediate scrutiny to a law barring possession of firearms by people convicted of domestic violence misdemeanors. In U.S. v. Redwood, the Northern District applied intermediate scrutiny to a blanket ban on firearm possession within 1,000 feet of the school. And most recently, in People v. Chiras, this Court applied intermediate scrutiny to strike down a criminal law that imposed a categorical prohibition. So despite this robust and binding case law, plaintiff instead resorts to legal tests that have been imported from unrelated fundamental rights doctrines to argue for strict scrutiny and argues that, but we would position that this is error. It ignores the framework that this Circuit has set in Ezel 1 and 2, and it's the law of the land, and it says that intermediate scrutiny applies. Again, the county taxes are so closely tied to their public safety objective that they survive any level of heightened scrutiny, and all these funds are directed to the Public Safety Fund, which in turn supports the criminal justice agencies that are tasked with combating gun violence, and they're a de minimis burden. To get around the appellate court's proper holding, plaintiffs urge you to adopt these unrelated doctrines from other rights and make mention that the appellate court erred because they ignored these cases. But the truth is that ignoring cases that are irrelevant is never error. While all fundamental rights are co-equal, they are not the same and they're not dealt with the same. Each fundamental right has its own distinct body of case law that has been developed over our 200 years of American jurisprudence. And the Second Amendment is unique from the other fundamental rights. It is not a second-class right, but it's an entirely different right because it was expressly limited by our Supreme Court in Heller. The Supreme Court was clear, again, that the right is not unlimited and that it was not intended to cast doubt on long-standing limitations on the acquisition, the commercial sale of firearms. In this way, the courts have tailored the Second Amendment framework to accommodate the right to bear arms while still allowing local governments the ability to address public safety concerns. So while the courts draw inspiration from the jurisprudence of other rights, plaintiffs are basically asking you to cherry-pick cases that are favorable from one fundamental right to another. And it must not be allowed. Your Honors, I see that my time has expired. May I briefly conclude? Sotomayor. Yes. You have until the red light goes on. Excellent. Thank you. So for the reasons that have been elaborated in our brief, we ask that this Court uphold the ruling of the appellate court in its entirety, finding that Max and Shooter Supplies has no standing in this case. There's no uniformity clause issue. The Cook County Firearms Sales Taxes are not preempted by the FOID Act or by the Firearm Concealed Carry Act. And that the constitutional nature of this law is not in question as they withstand scrutiny under the Second Amendment and the Illinois Constitution and are proper exercises of home rule taxing authority. Thank you for your time today. This issue is very important to the taxpayers of Cook County who have to shoulder the extensive burden, fiscally and otherwise, brought upon the county by gun crimes. Thank you. Thank you. Mr. Anderson? Yes. Thank you, Your Honors. Although the county denies it, the argument you just heard confirms that in order to uphold the Court of Appeals in this case, you have to find that the Second Amendment is a second-class right. Supposing counsel argued that different constitutional rights have different tests, different standards that have arisen up around them, but there is one thing that unites all of them to date. As we mentioned, the right to freedom of the press, freedom of religion, to vote, to marry, to travel, to access the courts. Taxes on the exercise of those rights that single them out for special taxation are unconstitutional across all of those constitutional rights. It would this the opposing counsel has not pointed to a single case in any constitutional context where singling out the exercise of a fundamental right has been upheld. This would be the first. In the briefing, they mentioned interstate commerce and the right to travel, but the cases are clear that generally applicable laws that incidentally burden those activities are okay. But if you single them out, they're unconstitutional. So that is the principle that is at stake in this case. And opposing counsel also criticizes us for not citing two other cases in this area. That is because this is the first case. No other court has faced a Second Amendment challenge to a tax, a special tax, on Second Amendment rights. And that is because Cook County is one of only two jurisdictions in the history of this nation to attempt this. The Seattle case, for whatever reason, the plaintiffs in that case didn't raise a Second Amendment claim. I don't know why, but that's why that case didn't address the Second Amendment case. The counsel discussed the National Firearms Act. That was a tax on sawed-off shotguns and machine guns. And the Supreme Court in Heller said that act may have been struck down if those firearms were protected by the Second Amendment, but those arms are outside the Second Amendment, which is the reason why that tax was allowed to remain in place and why it's no precedent for the tax at issue here. Counsel also says that intermediate scrutiny needs to apply. This court has not uniformly applied intermediate scrutiny in Second Amendment cases. In Aguilar, it categorically struck down Illinois' ban on carrying firearms in public. And in Webb, it categorically struck down the ban on carrying stun guns. Did either one of those cases specifically adopt a strict scrutiny standard? No. They didn't apply any scrutiny at all. They said after the first step, this is just categorically illegitimate and did not apply any sort of scrutiny, similar to the Heller case. And the other cases that this Court has dealt with in Second Amendment issues, the Court has consistently, when discussing what level of scrutiny is appropriate, has consistently used an intermediate standard. Has it not? When it has applied a scrutiny analysis, but it has not applied it in all cases, and it has said it's a sliding scale. And it has looked to other constitutional rights that have a similar, you know, in the First Amendment. Some laws are subject to intermediate scrutiny. Some laws are subject to strict scrutiny. Now it would submit the Second Amendment is no different. Now it would submit the binding precedent is Boynton, which followed Minneapolis Star and Tribune, which was in a different constitutional right. It was the right to freedom of the press. Boynton was freedom to marry. And the Court said under Minneapolis Star and Tribune, because this is a tax on a fundamental right, we must apply strict scrutiny like the Supreme Court did in Minneapolis Star and Tribune. But ultimately nothing turns on that distinction, because even under intermediate scrutiny, you can't burden substantially more protected conduct than you need to, to achieve your objectives. And here the objective is raising revenue. And there is a clear alternative, get the money from a generally applicable tax like every other jurisdiction in the country except for Seattle does. So even under intermediate scrutiny, there is no way that this law can succeed. It's not even clear that this is a net benefit financially to Cook County, because this extra tax on firearms and ammunition directs sales outside of the county to people trying to avoid the taxes. So then they lose the sales tax revenue from those sales. The evidence in the record indicates that from June to December 2016, Maxson's revenue from ammunition sales was down $51,000, which was the first seven months that the ammunition tax was in effect. So they've not attempted to conduct any sort of net analysis of the money they're also indicates are saying, come buy from us and don't pay the, quote, unquote, Crook County tax. So even under its own objective, it's not clear that this tax meets that objective. There's an argument that the burden here is somehow de minimis. But, you know, a $25 tax is in no circumstance de minimis. Even the ammunition tax, the evidence in the record that the sale that one of the Gun Save Lives members, the purchase that they were involved in, it was about 12.5 percent on the sale of that ammunition. So that is not a de minimis tax. And, again, as I stated in the opening, it's much more than taxes that have been struck down. And going back again over 200 years to McCullough, the Supreme Court has said when we're dealing with taxes that are infringed upon an improper area, and that was a State attempting to tax the Federal government, its operations, we don't analyze the extent of the burden. It is the tax itself, the extension of the taxing power to that area. That is the burden, and that's the substantial burden, and that is the line in the So for all those reasons, Your Honor, we, Your Honors, we submit that this tax must be struck down. I'm happy to field any additional questions. Otherwise, we ask you to reverse. There appear to be no additional questions, Counsel. Thank you. Okay. Thank you very much. Okay. Case number 126014, Gun Save Lives v. Kinsar Ali et al. will be taken under advisement as of today. Mr. Patterson, Ms. Jimenez, we thank you for your arguments today.